IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | |
| Plaintiff, | CIVIL CASE NO. 1:06-CV-2965-JTC |
| v. | |
| EPIC SYSTEMS CORPORATION. | |
| Defendant. | |

**O R D E R**

This matter is currently before the Court on Defendant's motion for summary judgment of noninfringement [#114]. Defendant moves for summary judgment on Plaintiff's claims of patent infringement on the basis that the entities using its accused software do not perform all elements of the patent-in-suit, and, therefore, Defendant cannot have infringed that patent. The Court disagrees and **DENIES** Defendant's motion [#114].

I. **Background**

The technology at issue in this patent infringement action involves a method for a health-care provider and a patient to communicate automatically and electronically with each other. The patent-in-suit is U.S. Patent No. 6,757,898 ("the '898 patent"), owned by Plaintiff McKesson Information Solutions LLC. The allegedly infringing product is MyChart, a health-care information software product made and sold by Defendant Epic

Systems Corporation.

A.  The '898 Patent

The '898 patent relates to "an automated system of electronic communications between a health-care or medical service provider and his/her patient, for the purpose of providing a simple, reliable and effective interface for rapidly exchanging inquiries, responses, data, services and information between [] both parties for the mutual benefit and satisfaction of each." '898 patent, col. 1, ll. 5-13. The '898 patent contains eighteen claims. '898 patent, cols. 44-46. McKesson alleges that Epic has directly or indirectly infringed claims 1-10 and 12-18 of the '898 patent. (Def.'s Stmt. of Material Facts ("DSMF") ¶ 1; Pl.'s Resp. DSMF ¶ 1.)

The parties agree that claim 1 of the '898 patent is a method claim. (DSMF ¶ 2; Pl.'s Resp. DSMF ¶ 2.) Claim 1 recites "[a] method of automatically and electronically communicating between at least one health-care provider and a plurality of users serviced by the health-care provider . . ." '898 patent, col. 44, ll. 60-62. While the parties dispute the proper construction of some of the terms in claim 1, the parties agree that the method recited in claim 1 consists of approximately four steps. (DSMF ¶¶ 4-7; Pl.'s Resp. DSMF ¶¶ 4-7); '898 patent, col. 44, ll. 64 - col. 45, ll. 24. Those steps are as follows:

1.  Claim 1 first requires the step of "initiating a communication by one of the plurality of users to the provider for information, wherein the provider has established a preexisting medical record for each user." '898 patent, col. 44, ll. 64-67; (DSMF ¶ 4; Pl.'s Resp. DSMF ¶ 4).

2.  Claim 1 then requires the step of "enabling communication by transporting the communication through a provider/patient interface over an electronic communication network to a Web site which is unique to the provider, whereupon the communication is automatically reformatted and processed or stored on a central server, said Web site supported by or in communication with the central server through a provider-patient interface service center." '898 patent, col. 45, ll. 1-8; (DSMF ¶ 5; Pl.'s Resp. DSMF ¶ 5).

3.  Next, Claim 1 requires the step of "electronically comparing content of the communication with mapped content, which has been previously provided by the provider to the central server, to formulate a response as a static or dynamic object, or a combined static and dynamic object; and returning the response to the communication automatically to the user's computer, whereupon the response is read by the user or stored on the user's computer." '898 patent, col. 45, ll. 9-16; (DSMF ¶ 6; Pl.'s Resp. DSMF ¶ 6).

4.  Claim 1 concludes by stating "said provider/patient interface providing a fully automated mechanism for generating a personalized page or area within the provider's Web site for each user serviced by the provider." '898 patent, col. 45, ll. 17-21; (DSMF ¶ 7; Pl.'s Resp. DSMF ¶ 7).

The remaining claims of the '898 patent are dependent upon claim 1, in that they refer to and incorporate the method recited in claim 1. '898 patent, col. 45-46; (Pl.'s Claim Constr. Br. at 12; Def.'s Claim Constr. Br. at 3).

B.  Defendant's Allegedly Infringing Product

MyChart is a software system that was developed by Epic. (PSMF ¶ 1;

Def.'s Resp. PSMF ¶ 1.)  MyChart allows health-care providers to make medical records and other information available to users so that the users can access that information.  (DSMF ¶ 8; Pl.'s Resp. DSMF ¶ 8.)  Epic's MyChart software allows patients who have computer and internet access to log on to their provider's website using a unique username and password in order to access medical records and other information.  (DSMF ¶ 11; Pl.'s Resp. DSMF ¶ 11.)  Defendant argues that, because no single entity using its MyChart software performs every step of the method recited in claim 1 of the '898 patent, it cannot be held liable for infringement.

## II. Legal Standard

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The substantive law applicable to the case determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant,' . . . and draw 'all justifiable inferences . . . in his favor . . . .'" United States v. Four Parcels, 941 F.2d 1428, 1437 (11th Cir. 1991).  The court may not weigh conflicting evidence nor make credibility determinations. Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993), reh'g denied, 16

F.3d 1233 (1994) (en banc).

In the context of patent infringement claims, a determination of noninfringement of a patent is a question of fact, and courts must resolve all reasonable factual inferences in favor of the patentee. IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422, 1429 (Fed. Cir. 2000). To grant a motion for summary judgment of noninfringement, a court must find that "no reasonable jury could find infringement." Id.

## III. Discussion

Defendant argues that, under BMC Res., Inc. v. Paymentech, L.P., 498 F.3d 1373, 1378 (Fed. Cir. 2007), it cannot be found liable for infringement of the '898 patent because: (1) the providers using its MyChart software do not perform all of the steps of the method described in claim 1 of the '898 patent; and (2) the providers do not direct or control the users of MyChart to perform any steps the providers do not perform themselves.

In BMC, the United States Court of Appeals for the Federal Circuit addressed "the proper standard for joint infringement by multiple parties of a single claim." 498 F.3d at 1378. "Direct infringement requires a party to perform or use each and every step or element of a claimed method or product." Id. (internal citations omitted). In the context of method patent claims, "infringement occurs when a party performs all of the steps of the

process." Id. at 1379.  This is often referred to as the single-entity rule.

However, there is an exception to this rule:

> A party cannot avoid infringement . . . by contracting out steps of a patented process to another entity.  In those cases, the party in control would be liable for direct infringement.  It would be unfair indeed for the mastermind in such situations to escape liability.

Id. at 1381.  Thus, a party may be held liable for infringing a method patent claim when that party either performs each step of the patented method or when that party directs and controls the performance of any step of the patented method which it does not personally perform.

Step 1 of claim 1 of the '898 patent requires "initiating a communication by one of the plurality of users to the provider for information, wherein the provider has established a preexisting medical record for each user[.]"  '898 patent, col. 44, ll. 64-67.  Epic argues that, under BMC, it does not infringe claim 1 of the '898 patent because the MyChart users – as opposed to the providers – perform step 1 of the method. (PSMF ¶ 6; Def.'s Resp. PSMF ¶ 6.) For the following reasons, the Court finds that questions of material fact remain as to whether the providers using Epic's MyChart software direct and control the user to perform the first step of the method.

First, the method at issue in this case is distinguishable from the method at issue in BMC.  The court in BMC found that the defendant did not infringe the patented method because the defendant's method required third

6

party debit networks and financial institutions to perform integral parts of the method.  Id. at 1381-82.  The first step in the allegedly infringing process in BMC required that "the customer call[] the merchant to pay a bill using an IVR."  Id. at 1375.  Although the accused process in BMC required a "user" to make a call to initiate the method, the court in BMC did not focus on the actions of the customer or "user."  Rather, the court in BMC focused on the actions taken by the financial institutions and debit networks which were necessary steps of the method after it was initiated.

Here, once the MyChart method is initiated, the remaining steps of the method are performed by the provider.  Initiating the communication is not a part of the method itself; rather, the MyChart method begins *after* the user has initiated the communication.  Thus, unlike the debit networks and financial institutions in BMC, MyChart users do not perform an integral part of the method.  The "user" only initiates the method, each step of which is performed by MyChart.

Even if initiation by the user is considered an integral part of the method, questions of fact remain as to whether the provider directs and controls those actions.  McKesson points to the following evidence to show that providers "direct and control" users to initiate the communication[1]:

---

[1] Epic objects to this evidence on the grounds that it is based solely on a conclusory declaration by McKesson's expert.  However, McKesson's expert states

- A user can only initiate a communication with the health-care provider via MyChart if the health-care provider creates a medical record for the user. (Pl.'s Stmt. of Facts ¶ 15.)

- A user can only initiate a communication using MyChart if the health-care provider provides the user with an access code and activate's the user's account. (Id. ¶ 16.)

- The provider directs the user to enter the user's name and password in order to log on to the website. (Id. ¶ 17.)

- A provider can change a user's password at any time. (Id. ¶ 18.)

- The provider occasionally requires the user to read and agree to terms and conditions. (Id. ¶ 19.)

- Once the health-care provider authenticates a user, it sends a "cookie" to the user's computer. This cookie generates a token that attaches to any action taken by the user. (Id. ¶¶ 20-22.)

- MyChart uses content linking, which automatically creates a query for articles of interest based upon the user's age and sex and standard industry diagnoses or medication codes. These queries are automatically generated and sent to the database by the provider, not the user. (Isbell Decl. ¶ 12(g).)

- MyChart also uses a content relevancy engine ("CRE"). The CRE compiles relevant articles based on the user's age and sex and standard industry diagnoses or medication codes and adds links to the articles on the user's home page. If the user clicks on the link, MyChart automatically initiates a communication to the providers' database for the articles which are then automatically provided to the user. (Isbell Decl. ¶ 12(h).)

---

that he analyzed the MyChart source code and administrative and design documents before coming to these conclusions. (Isbell Decl. ¶ 2.) In addition, Epic failed to respond to McKesson's statement of facts with evidence from their own expert. Because the Court must view the facts in the light most favorable to McKesson, as the patentee, the Court accepts McKesson's expert's description of the MyChart software as true.

This evidence is at least sufficient to create a genuine issue of material fact as to whether in both the MyChart situation, as well as in the McKesson method, the actions of the users are directed and controlled to the point they become joint infringers.

Epic also argues that a user performs step 3 of claim 1, because after the communication is returned to the user, "the response is read by the user or stored on the user's computer." '898 patent, col. 45, ll. 9-16. However, McKesson's expert states that the responses in MyChart are automatically stored on the user's computer and "it is immaterial whether the user actually reads the responses for purposes of complying with the claim terms." (Isbell Decl. ¶ 8.) Thus, a jury could also find that the user does not perform step 3 of the method. Therefore, Defendant's motion for a summary judgment of noninfringment [#114] is **DENIED**.

IV.  **Claim Construction**

The parties have completed their claim construction briefing pursuant to Patent Local Rule 6, and this case is ripe for a <u>Markman</u> hearing. Therefore, the parties are **DIRECTED** to appear for a <u>Markman</u> hearing on Thursday, June 19, 2008 at 10:00 a.m. at the U.S. Courthouse, 75 Spring Street, Atlanta, GA, Courtroom 2106. At the hearing, the Court will hear argument and receive evidence on the parties' proposed claim constructions.

9

The Court will impose time limits on each party's presentation. Thus, the parties are encouraged to rely to the extent possible on documentary evidence susceptible to admission, including affidavits. In addition, each party will be limited to one expert witness, unless it can make a substantial showing that more than one expert witness is necessary. The parties are **DIRECTED** to file a summary of the testimony, intrinsic evidence, and extrinsic evidence expected to be relied upon at the hearing no later than June 12, 2008.

V. **Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment of noninfringement [#114] is **DENIED**. In addition, Defendant's motion for leave to file excess pages [#104] is **GRANTED**, Plaintiff's motion for leave to file response under seal [#118] is **GRANTED**, and Plaintiff's motion for leave to file sur-reply [#123] is **GRANTED**. Lastly, the parties are **DIRECTED** to appear for a <u>Markman</u> hearing on Thursday, June 19, 2008 at 10:00 a.m., in accordance with the above directives.

**SO ORDERED**, this 16th day of May, 2008.

_____
JACK T. CAMP
UNITED STATES DISTRICT JUDGE