IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | |
| Plaintiff, | CIVIL CASE NO. |
| v. | 1:06-CV-2965-JTC |
| EPIC SYSTEMS CORPORATION. | |
| Defendant. | |

## O R D E R

This matter is currently before the Court on Defendant's motion to compel [#265] and Plaintiff's emergency motion to exclude untimely produced evidence [#269].  For the following reasons, the Court grants in part both Defendant's motion to compel and Plaintiff's emergency motion.

## I.    Defendant's Motion to Compel [#265]

In its motion to compel, Defendant asks the Court to compel Plaintiff to provide supplemental answers to Defendant's requests for admission numbers 1-400 and 469-570.  Requests for admission numbers 1-400 are directed towards eleven prior art references and systems (hereinafter the "Prior Art Requests").  Requests for admission numbers 469-570 are directed towards three systems sold by Plaintiff which Plaintiff alleges are not covered by the '898 patent (hereinafter the "Non-covered Requests").

A.    Law Governing Requests for Admission

Under the Federal Rules of Civil Procedure, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  Parties may obtain discovery by serving requests for admission:

> A party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
> > (A)    facts, the application of law to fact, or opinions about either; and
> >
> > (B)    the genuineness of any described documents.

Fed. R. Civ. P. 36(a)(1).  If the responding party objects to the request:

> The requesting party may move to determine the sufficiency of an answer or objection.  Unless the court finds an objection justified, it must order that an answer be served.  On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.  The court may defer its final decision until a pretrial conference or a specified time before trial.  Rule 37(a)(5) applies to an award of expenses.

Fed. R. Civ. P. 36(a)(6).  Although "a reasonable burden may be imposed on the parties" in order to "facilitate preparation for trial and ease the trial process[,]" the rules require "only that the answering party make reasonable inquiry and secure such knowledge and information as are readily obtainable by him."  Fed. R. Civ. P. 36, Adv. Comm. Notes.  If the requests are "so

2

voluminous and so framed that the answering party finds the task of identifying what is in dispute and what is not unduly burdensome[,] . . . the responding party may obtain a protective order under Rule 26(c)." Id.

B.    Discussion

The Court has no intention of reviewing all 501 Requests and ruling on each.  Rather, the Court has stated the general rule and will rule on several representative Requests.  The parties shall infer from the Requests which the Court rules upon which of the other Requests are appropriate.

1.    *The Prior Art Requests*

In the Prior Art Requests, Defendant asks Plaintiff to admit that the claim elements of the '898 patent are present in eleven different prior art references – eight prior art "systems" and three prior art publications.  Upon full responses to the Prior Art Requests, Defendant asserts that it can focus its invalidity case on the claim elements whose novelty or obviousness are truly in dispute.

Under Fed. R. Civ. P. 36, a party can be required to admit issues of fact or the application of law to fact.  Fed. R. Civ. P. 36(a)(1)(A).  However, a party cannot be required to admit issues of law.  "Even though a request may be phrased to appear factual, if it encroaches on legal turf, or reaches the ultimate decision of the court, the requests will be seen as seeking a legal

conclusion and cannot be compelled." Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc., 1:05-CV-64 TS, 2007 WL 128962, at *2 (D. Utah Jan. 11, 2007).

Based upon these principles, the Court finds that Requests similar to Request #1 are improper.  Request #1 asks Plaintiff to admit that "the HealthMagic system is prior art to the '898 patent."  This type of request asks for a legal conclusion and is, therefore, improper.  See Phillip M. Adams & Assocs., 2007 WL 128962 at *1 ("[S]ince that request also used the term 'prior art,' a response was not compelled.") (discussing Pittway Corp.); Pittway Corp. v. Fyrnetics, Inc., No. 91 C 2978, 1992 WL 12564602, at *12 (N.D. Ill. June 26, 1992) ("[I]t is improper to compel Pittway to admit that certain art is 'prior art' as to the patent-in-suit under 35 U.S.C. § 102 and/or 103.").

On the other hand, several of the Requests ask Plaintiff to admit issues of fact.  For example, Request #4 asks Plaintiff to admit that "the HealthMagic system was not considered by the United States Patent and Trademark Office during the prosecution of the '898 patent."  This is a pure question of fact and should be admitted or denied.

In addition, Request #5 asks Plaintiff to admit that "the HealthMagic system provided for automatic and electronic communication between at least one health-care provider and a plurality of users serviced by the health-care provider."  This is also a question of fact, and the Court has construed some of

4

the terms as used in the '898 patent.  Furthermore, the information required to admit or deny these Requests should be available in the record of this case. Therefore, this and similar Requests should be admitted or denied.

### 2.    *The Non-covered Requests*

The Non-covered Requests are directed towards systems sold by Plaintiff which Plaintiff alleges are not covered by the '898 patent.  Each of the Non-covered Requests asks Plaintiff to admit whether a specific claim of the '898 patent is present in the allegedly non-covered systems.  Plaintiff objects to the Non-covered Requests on two grounds.  Both objections are without merit.

First, the Requests are arguably relevant to Defendant's invalidity defense.  Denials by Plaintiff that the Non-covered Products disclose certain elements of the '898 patent would be relevant to whether products sold by Defendant which are identical to the Non-covered Products also disclose those particular elements.  Along the same lines, an admission by Plaintiff that one of its Non-covered Products discloses a particular element of the '898 patent is arguably relevant to whether a prior art reference similar to the Non-covered Product practices the same particular claim element.

Second, the Requests require Plaintiff to review its own products to determine whether they disclose particular elements of a patent which is

owned by Plaintiff.  Thus, Plaintiff is in possession of all the information necessary to respond to the Requests, and the Requests are proper.

    C.    <u>Refiling of the RFA's</u>

The Court **DIRECTS** Defendant to refile the Requests for Admission within ten (10) days of the entry of this Order, with the following limitations. Because the Court finds that 501 Requests for Admission are excessive in light of the relevance of the information Defendant seeks to discover, Defendant is limited to 200 Prior Art Requests and 25 of the Non-covered Requests.

The Court **DIRECTS** Plaintiff to respond to Defendant's new Requests for Admission within twenty (20) days of being served with the Requests. Plaintiff must respond to the Requests consistently with the above rulings. Therefore, Plaintiff must respond to all Requests for Admission which concern issues of fact or the application of law to fact.  However, Plaintiff need not respond to any Requests for Admission which concern legal conclusions, such as whether certain art constitutes "prior art" to the '898 patent.  Nor is Plaintiff required to go beyond a "reasonable inquiry" in order to admit or deny a Request.  If the information required to admit or deny is not "reasonably available" to Plaintiff, Plaintiff is not required to respond. <u>See</u> Fed. R. Civ. P. 36, Adv. Comm. Notes.  The Court considers this a

6

determination which reasonable attorneys – such as the experienced counsel in this case – should be able to resolve.  If the Court is required to review the responses pursuant to a subsequent motion by either party, the Court, after a hearing, will impose sanctions upon the party or attorney responsible.  Fed. R. Civ. P. 37(a)(5).

To the extent that Plaintiff denies a request concerning a factual issue and Defendant subsequently proves the factual issue contained in the specific request to be true, the Court will award Defendant its fees and expenses incurred in proving that particular matter.  See Fed. R. Civ. P. 37(c)(2). Because the Court is ordering Defendant to refile its Requests for Admission, the Court will not award Defendant its attorney's fees and costs associated with bringing the motion to compel.

## II.   Plaintiff's Emergency Discovery Motion [#269]

In its emergency motion, Plaintiff first asked that the Court extend fact discovery for 45 days, which the Court denied.  Plaintiff also asks the Court to exclude[1] the following arguments and evidence:

- •   23,000 documents Defendant allegedly produced in an untimely manner;

_____

[1] In its reply brief, Plaintiff asks the Court not to exclude the discovery materials in question, but instead to impose certain harsher sanctions.  Because Plaintiff only addressed the exclusion of the materials in its opening brief, the Court will not address Plaintiff's requests that go beyond the initial request.

- Software and documents relating to Defendant's own prior art products;

- Defendant's internal documents relating to prior art known as HealthMagic;

- Defendant's new theory to support its estoppel defense; and

- Rule 30(b)(6) deposition testimony which Plaintiff alleges is deficient.

Fed. R. Civ. P. 37(c) governs a party's failure to provide discovery or supplement prior discovery responses. That rule provides that:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). Thus, if the Court determines that Defendant failed to timely supplement its prior disclosures or discovery responses, the Court will forbid Defendant from relying on that information unless Defendant shows that its failure was substantially justified or is harmless.

A.   23,000 Untimely Produced Documents

On November 5, 2008 – a week prior to the close of fact discovery – Defendant identified over 23,000 "additional documents" that should have been produced during discovery. Plaintiff asks that the Court exclude this evidence from the case.

The Court finds that Defendant's late production of the 23,000

8

documents in question was not substantially justified.  Defendant admits that the "23,000 files should have been produced earlier," but argues that they did not timely produce the files because they "inadvertently" overlooked the files during an initial review of potentially discoverable materials.  An excuse that the attorneys merely "overlooked" the documents in question does not *substantially* justify Defendant's failure to timely produce the documents.

In addition, the Court finds that Defendant's late production prejudiced Plaintiff.  Defendant argues that many of the 23,000 documents were duplicative, and, therefore, their untimely production did not prejudice Plaintiff.  While many of the documents may have been duplicative, the fact remains that Plaintiff was not able to review certain documents which it believes were relevant to the case until the final days of fact discovery.  For these reasons, the Court **GRANTS** Plaintiff's request and forbids Defendant from relying on the 23,000 files produced on November 5, 2008.

B.    Discovery Related to Defendant's Prior Art Products

On October 31, 2008 – a week and a half prior to the close of fact discovery – Defendant made available for the first time documents and software related to Defendant's own products which Defendant contends constitutes prior art relevant to the patent-in-suit.  Plaintiff argues that the documents produced on October 31, 2008 were responsive to Plaintiff's March

5, 2007 discovery requests, and, therefore, should be excluded as untimely

produced.  Defendant argues that the documents produced on October 31,

2008 were responsive to Plaintiff's October 13, 2008 document requests

rather than the earlier requests, and, therefore, were timely.

The March 5, 2007 requests asked for:

- All documents supporting, refuting or otherwise relating to the averments of non-infringement, invalidity and unenforceability of the '898 patent set forth in Epic's Answer and Counterclaims.

- All documents supporting, refuting or otherwise relating to Epic's contention that the '898 patent and all of the claims thereof are invalid and unenforceable for failure to comply with one or more of the requirements of the Patent Act.

- All documents, including without limitation any and all prior art which Epic contends are relevant to the interpretation, validity, enforceability, or scope of any claim of the '898 patent.

(Pl.'s Mot. n. 3.)  On October 13, 2008, Plaintiff served its Continuing

Requests for Production of Documents on Defendant, which requested:

- Each and every compact discs or other electronic medium containing Epic software that Epic provided to its existing or potential customers between January 1, 1998 and December 31, 2000, including any accompanying correspondence identifying or otherwise confirming the dates on which Epic provided said software to its customers.

- Any design documents, administrator guides, installation guides or other documents that Epic provided to its customers pertaining to the implementation, configuration and operation of the software Epic offered for sale between January 1, 1997 and December 31, 2000, specifically including documentation pertaining to Epic's EpicCare, EpicLink, EpicWeb and

PatientWeb software.

(Moore Decl. Ex. L at 6.)

The documents and files Plaintiff seeks to exclude are compact discs containing source code and other documents which Defendant sent to its customers in 1999.  Thus, they were responsive to the October 13, 2008 requests.  However, to the extent Defendant intends to use the materials produced on October 31, 2008 to support their "averments of non-infringement, invalidity and unenforceability," those documents would also be responsive to the March 5, 2007 requests.  For these reasons, the Court **GRANTS** Plaintiff's request and forbids Defendant from relying on the files produced by Defendant on October 31, 2008 to support any theory of non-infringement, invalidity, and unenforceability.

C.   HealthMagic Documents

Defendant identified a software system known as HealthMagic as invalidating prior art.  (Pl. Ex. 4 at 6-8.)  Plaintiff asks the Court to exclude 75 internal documents Defendant produced on November 12, 2008 which are relevant to the HealthMagic prior art.

The Court finds that Defendant was not substantially justified in producing these documents on the last day of discovery.  Defendant states that it did not learn of the additional documents during normal discovery

11

searches because those documents were archived and the parties agreed not to search "backup tapes or other data not stored on a live computer system . . . absent further request." However, Defendant alleged early in the case that HealthMagic constituted prior art. Thus, Defendant should have produced all documents relevant to HealthMagic in response to Plaintiff's March 5, 2007 requests, including the 75 documents produced on November 12, 2008. Therefore, the Court **GRANTS** Plaintiff's request and forbids Defendant from relying on the HealthMagic documents produced on November 12, 2008.

D.    Defendant's Estoppel Defense

On February 2, 2007, Defendant filed its answer in this case, which asserted, among other things, an affirmative defense under the doctrine of equitable estoppel. (Answer at 4.) On March 5, 2007, Plaintiff served an interrogatory on Defendant which requested that Defendant describe "each fact supporting [Defendant]'s contention that the doctrine[] of . . . estoppel . . . bars [Plaintiff]'s claims for damages . . . ."

In its initial response to the interrogatory, Defendant stated:

The facts and bases supporting the referenced defenses include, without limitation, that McKesson was aware of MyChart prior to filing this lawsuit. McKesson never notified Epic of any alleged infringement issues before filing this lawsuit. Moreover, to the extent that McKesson seeks to interpret the claims of the '898 patent differently than any of the statements made during prosecution of the application that led to the patent's issuance would permit, it is estoped from taking such positions in this

12

litigation by virtue of those prior representations.  Epic reserves
the right to supplement this response as appropriate.

(Moore Decl. ¶ 30; Ex. O.)  On October 31, 2008 – a week and a half prior to

the close of fact discovery – Defendant supplemented its response and stated:

> McKesson is further estopped from any recovery based on claims
> of patent infringement related to the use of MyChart by Epic
> customers that involves content provided by McKesson's Clinical
> reference System ("CRS") because, among other reasons, Epic
> possesses a license to use the CRS content that includes
> indemnification for liabilities created by using the CRS content,
> and McKesson has agreed not to bring an action against Epic
> based upon these agreements and would be breaching them by
> doing so.

Plaintiff asks the Court to exclude any evidence supporting Defendant's

licensing theory.

Defendant's alleged failure to supplement its interrogatory response at

an earlier time is harmless.  Defendant's estoppel defense is based on

agreements which Plaintiff has access to and was aware of well before

Defendant's supplemental interrogatory response.  In addition, Plaintiff had

the opportunity to ask Defendant's 30(b)(6) deponents how the CRS licensing

agreements support Defendant's estoppel defense, but did not do so.  For

these reasons, the Court **DENIES** Plaintiff's request to strike Defendant's

licensing argument.

E.    Rule 30(b)(6) Deposition Testimony

On September 5, 2008, Plaintiff served on Defendant a notice of

13

deposition under Fed. R. Civ. P. 30(b)(6).  The 30(b)(6) notice requested that
Defendant produce a witness to testify concerning the specific customer
implementations of Defendant's MyChart software.  Defendant made its
30(b)(6) deponent, Haris Domazet, available for deposition on November 6,
2008.  Plaintiff contends that Domazet's deposition testimony was deficient
because Domazet could not identify how Defendant's customers implemented
MyChart.

Defendant states that it produced all the information it has – via
document productions and Domazet's testimony – concerning customer
implementations of MyChart.  Defendant produced a Customer Profile
Spreadsheet ("CPS"), which contains information about its customer's
MyChart implementations, including, among other things, information on the
current version of MyChart the customer uses, the customer's server
architecture, whether the customer has specified how content is linked from
MyChart, and where that content is stored.  As acknowledged by Plaintiff,
Domazet explained the CPS in his 30(b)(6) deposition.

Because Defendant states that it provided Plaintiff with all of the
information it has which is relevant to Defendant's customer's
implementations of MyChart, the Court **DENIES** Plaintiff's request to
exclude the testimony of Domazet.  However, to the extent that Defendant

has evidence relevant to its customer's implementations of MyChart which Defendant has not yet disclosed to Plaintiff, Defendant may not rely on such evidence in the future and the Court will sanction Defendant for failing to produce the evidence in a timely manner.

## III.   Conclusion

Consistent with the above findings, the Court **GRANTS in part** and **DENIES in part** Defendant's motion to compel [#265] and Plaintiff's emergency motion to exclude untimely produced evidence [#269].  In addition, the Court did not consider the new relief requested in Plaintiff's reply brief. The Court, therefore, **DENIES as moot** Plaintiff's motion for leave to file a sur-reply in opposition to Plaintiff's emergency motion [#288].

**SO ORDERED**, this 9th day of February, 2009.

_____
JACK T. CAMP
UNITED STATES DISTRICT JUDGE