IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MCKESSON INFORMATION
SOLUTIONS LLC,

    Plaintiff,

      v.

EPIC SYSTEMS CORPORATION.

    Defendant.

CIVIL CASE NO.
1:06-CV-2965-JTC

## O R D E R

This matter is currently before the Court on Plaintiff's motion for

summary judgment of no inequitable conduct [#313], Defendant's motion for

summary judgment [#314], and several procedural motions filed by both

parties [#346, #378, #382].  Defendant moves for summary judgment on

Plaintiff's claims of patent infringement on the grounds that the patent-in-

suit is invalid or, in the alternative, that Defendant's product does not

infringe the patent-in-suit.  Plaintiff moves for summary judgment on

Defendant's inequitable conduct defense.  For the following reasons, the

Court **GRANTS** Defendant's motion to strike [#378], **GRANTS in part**

Defendant's motion for summary judgment [#314] with respect to Plaintiff's

claims of infringement, and reserves ruling on the remaining issues.

I.    **Background**[1]

The technology at issue in this patent infringement action involves a method for a health-care provider and a patient to communicate automatically and electronically with each other.  The patent-in-suit is U.S. Patent No. 6,757,898 ("the '898 patent"), owned by Plaintiff McKesson Information Solutions LLC ("McKesson").  The allegedly infringing product is MyChart, a health-care information software product made and sold by Defendant Epic Systems Corporation ("Epic").

A.    <u>The '898 Patent</u>

The '898 patent relates to "an automated system of electronic communications between a health-care or medical service provider and his/her patient, for the purpose of providing a simple, reliable and effective interface for rapidly exchanging inquiries, responses, data, services and information between [] both parties for the mutual benefit and satisfaction of each."  '898 patent, col. 1, ll. 5-13.  The '898 patent contains eighteen claims.  '898 patent, cols. 44-46.  McKesson alleges that Epic's MyChart product infringes claims 1-10, 12-14, and 16-18 of the '898 patent.

---

[1] The Court views the facts in the light most favorable to Plaintiff, as the nonmovant, and draws all reasonable inferences in Plaintiff's favor.  <u>United States v. Four Parcels</u>, 941 F.2d 1428, 1437 (11th Cir. 1991).

Claim 1 of the '898 patent is a method claim, which recites "[a] method of automatically and electronically communicating between at least one health-care provider and a plurality of users serviced by the health-care provider . . ." '898 patent, col. 44, ll. 60-62. The method comprises the following steps:

- initiating a communication by one of the plurality of users to the provider for information, wherein the provider has established a preexisting medical record for each user;

- enabling communication by transporting the communication through a provider/patient interface over an electronic communication network to a Web site which is unique to the provider,

- whereupon the communication is automatically reformatted and processed or stored on a central server, said Web site supported by or in communication with the central server through a provider-patient interface service center;

- electronically comparing content of the communication with mapped content, which has been previously provided by the provider to the central server, to formulate a response as a static or dynamic object, or a combined static and dynamic object; and

- returning the response to the communication automatically to the user's computer, whereupon theresponse is read by the user or stored on the user's computer,

- said provider/patient interface providing a fully automated mechanism for generating a personalized page or area within the provider's Web site for each user serviced by the provider; and

- said patient-provider interface service center for dynamically assembling and delivering custom content to said user.

3

'898 patent, col. 44, ll. 64 - col. 45, ll. 24.  The remaining claims of the '898 patent are dependent upon claim 1, in that they refer to and incorporate the method recited in claim 1.  '898 patent, col. 45-46.

> B.   MyChart

MyChart is a software system that was developed by Epic.  (Def.'s Statement of Material Facts ("DSMF") ¶ 39; Pl.'s Resp. to DSMF ¶ 39.)  Epic is not a healthcare provider and it does not use MyChart to communicate with patients of a healthcare provider.  (DSMF ¶¶ 543-544; Pl.'s Resp. to DSMF ¶¶ 543-544.)  Rather, Epic licenses its MyChart software to various healthcare providers, including hospitals, medical groups, and pediatric facilities.  (DSMF ¶ 546; Pl.'s Resp. to DSMF ¶ 546.)  Those healthcare providers then use MyChart to allow their patients to access certain information, such as the patient's medical records, treatment information, and scheduling information.  (DSMF ¶ 547; Pl.'s Resp. to DSMF ¶ 547.)

The initial step of "initiating a communication" on MyChart is performed by a patient or other user, not by a healthcare provider.  (DSMF ¶ 548; Pl.'s Resp. to DSMF ¶ 548.)  A patient may initiate a communication with a healthcare provider using MyChart by logging into the provider's MyChart webpage using the patient's web browser and by entering a username and password.  (DSMF ¶ 550; Pl.'s Resp. to DSMF ¶ 550; Bysinger

Dep. 405:17-406:5.)  Patients may freely choose whether to initiate a communication and log into MyChart; healthcare providers who use MyChart do not require their patients to sign up for or to use MyChart.  (DSMF ¶¶ 551-554; Pl.'s Resp. to DSMF ¶¶ 551-554.  Thus, it is the patient's choice whether or not to initiate a communication with the provider.  (Bysinger Dep. 405:17-24.)

## II.  Legal Standard

Summary judgment is appropriate only when there are no genuine issues of material fact to be presented to a jury for decision and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The substantive law applicable to the case determines which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  In considering the motion for summary judgment, the Court "should 'resolve all reasonable doubts about the facts in favor of [Plaintiff],' . . . and draw 'all justifiable inferences . . . in [Plaintiff's] favor . . . .'"  Four Parcels, 941 F.2d at 1437.  The Court may not weigh conflicting evidence nor make credibility determinations.  Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993), reh'g denied, 16 F.3d 1233 (1994) (en banc).

When the non-moving party bears the burden of proof at trial, as is the case here, the moving party is not required to support its motion with

affidavits or similar material negating the non-moving party's claims.

Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  Instead,

with respect to Plaintiff's claims of infringement, Defendant may point out to

the Court an absence of evidence to support an essential element of Plaintiff's

case.  Id.  Plaintiff must then respond with sufficient evidence to withstand a

directed verdict motion at trial.  Fed. R. Civ. P. 56(e); Hammer v. Slater, 20

F.3d 1137, 1141 (11th Cir. 1994) (citations omitted).

## III.   Defendant's Motion for Summary Judgment [#314]

Epic previously moved for summary judgment on the grounds that: (1)

providers using Epic's MyChart software do not perform the step of "initiating

a communication;" and (2) MyChart providers do not direct or control users of

MyChart to initiate the communication.  The Court denied Epic's initial

motion for summary judgment because: (1) the step of initiating a

communication by the user is not a part of the method itself, rather the

method begins *after* the user has initiated the communication; and (2) even if

initiation by the user is an integral part of the method, McKesson offered

sufficient evidence to create a genuine issue of material fact concerning

whether healthcare providers implementing MyChart direct and control

MyChart users to initiate the communication.  (Order, May 16, 2008 at 5-9.)

Epic has again moved for summary judgment on McKesson's

infringement claims on the same grounds.  Upon review of recent case law and the evidence presently before the Court, the Court now finds that Epic is entitled to summary judgment on McKesson's claims of infringement.

    A.    <u>The Applicable Law</u>

In <u>BMC Res., Inc. v. Paymentech, L.P.</u>, 498 F.3d 1373, 1378 (Fed. Cir. 2007), the United States Court of Appeals for the Federal Circuit addressed "the proper standard for joint infringement by multiple parties of a single claim."  498 F.3d at 1378.  "Direct infringement requires a party to perform or use each and every step or element of a claimed method or product."  <u>Id.</u> (internal citations omitted).  In the context of method patent claims, "infringement occurs when a party performs all of the steps of the process." <u>Id.</u> at 1379.  However:

> A party cannot avoid infringement . . . by contracting out steps of a patented process to another entity.  In those cases, the party in control would be liable for direct infringement.  It would be unfair indeed for the mastermind in such situations to escape liability.

<u>Id.</u> at 1381.  Under <u>BMC Res.</u>, a party may be held liable for infringing a method patent claim when that party either performs each step of the patented method or when that party directs and controls the performance of any step of the patented method which it does not perform itself.

Recent case law – decided *after* this Court originally ruled on this issue – has clarified the <u>BMC</u> standard.  <u>See</u> <u>Muniauction, Inc. v. Thomson Corp.</u>,

7

532 F.3d 1318 (Fed. Cir. 2008), *cert. denied*, 129 S. Ct. 1585 (2009); <u>Global</u>

<u>Patent Holdings, LLC v. Panthers BRHC LLC</u>, 586 F. Supp. 2d 1331 (S.D.

Fla. 2008), *aff'd*, 318 F. App'x 908 (Fed. Cir. 2009).

       1.    *Muniauction, Inc. v. Thomson Corp.*

     The Federal Circuit's recent decision in <u>Muniauction</u> indicates that

controlling access to an online method and instructing users on how to use

the method is insufficient evidence of direction and control.  The patent at

issue in <u>Muniauction</u> claimed "electronic methods for conducting 'original

issuer auctions of financial instruments.'" <u>Muniauction, Inc. v. Thomson</u>

<u>Corp.</u>, 532 F.3d 1318, 1321 (Fed. Cir. 2008), *cert. denied*, 129 S. Ct. 1585

(2009).  The method was directed to municipal bond auctions which were to

be conducted over the internet.  <u>Id.</u>

     The patent provided an integrated system on a single server which

allowed "[bond] issuers to run the auction and bidders to prepare and submit

bids using a conventional web browser, without the use of other separate

software." <u>Id.</u> at 1322.  The parties did not dispute that no single party

performed every step of the asserted claims because the "inputting step" of

the patented method required "inputting data associated with at least one bid

for at least one fixed income financial instrument into said bidder's computer

via said input device." <u>Id.</u> at 1328-29, n.5.

In <u>Muniauction</u>, the Federal Circuit restated the rule set forth in <u>BMC Res.</u> that "where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'" <u>Id.</u> at 1329 (citing <u>BMC Res.</u>, 498 F.3d at 1380-81). The issue before the Federal Circuit in <u>Muniauction</u> was whether the auctioneer sufficiently controlled or directed the actions of the bidder – in inputting the bidder's bid on the bidder's computer – such that the auctioneer could be said to have performed every step of the patented method. <u>Id.</u>

The Federal Circuit held that the defendant did not perform every step of the claimed method nor had another party perform the steps on its behalf, and, therefore, the defendant did not infringe the asserted method claim as a matter of law. <u>Id.</u> at 1330. The court explained:

> Under <u>BMC Resources</u>, the control or direction standard is satisfied *in situations where the law would traditionally hold the accused direct infringer vicariously liable* for the acts committed by another party that are required to complete performance of a claimed method.

<u>Id.</u> (emphasis added). Most importantly, the court noted that the fact that the defendant "controls *access to* its system and instructs bidders on its use is

not sufficient to incur liability for direct infringement." Id. (emphasis added).

2.  *Global Patent Holdings, LLC v. Panthers BRHC LLC*

In Global Patent Holdings, the patent at issue claimed a "method for downloading responsive data from a remote server." Global Patent Holdings, LLC v. Panthers BRHC LLC, 586 F. Supp. 2d 1331, 1333 n.1 (S.D. Fla. 2008), *aff'd*, 318 F. App'x 908 (Fed. Cir. 2009).  The plaintiff alleged that the defendant infringed the method claim "by downloading responsive data, including audio/visual and graphical representations, such as JPEG images and/or other compressed data, on its website." Id.  The plaintiff alleged that the infringement took place through the joint action of both the defendant and the website user.  Id.  The plaintiff alleged that the defendant directed and controlled the website user by sending a set of computer programs to the user's computer through the defendant's website.  Id.  The defendant moved to dismiss the complaint on the grounds that the plaintiff had not alleged that the defendant either performed every step of the claimed method or directed and controlled the user in performing any steps not performed by the defendant.  Id.

After discussing the holdings in BMC Res. and Muniauction, the district court granted the defendant's motion to dismiss.  Id. at 1334-36.  In so doing, the court first noted that the patented method required two parties to

10

complete all of the method's steps: "a remote computer user, and the website server." <u>Id.</u> at 1335.  The court then noted that "the patented method does not begin until a computer user visits Defendant's website.  *If no person ever visited Defendant's website, then Plaintiff's patent would never be infringed.*" <u>Id.</u> (emphasis added).

The court found that the plaintiff failed to allege sufficient facts to suggest that the defendant directed or controlled the user in visiting the website.  <u>Id.</u>  The court noted that putting "Javascript programs on the remote user's computer to allow the process to begin" is insufficient to show direction or control.  <u>Id.</u>  In addition, the plaintiff did not allege that "remote users are contractually bound to visit the website," that "remote users are Defendant's agents who visit the website within the scope of their agency relationship," or any other "facts which would render Defendant otherwise vicariously liable for the acts of the remote user."  <u>Id.</u>

The court concluded that, because "the patented process cannot start until the remote user visits Defendant's website[,]" and because "Plaintiff has not alleged that these individuals visit Defendant's website under Defendant's 'direction or control[,]'" the defendant could not be liable for direct patent infringement.  <u>Id.</u>

11

B.     Application of *BMC, Muniauction,* and *Global Patent Holdings*

Although the Court denied Epic's motion previously, the <u>Muniauction</u> and <u>Global Patent Holdings</u> decisions – which clarified the <u>BMC Res.</u> decision – compel the Court to now grant Epic's motion for summary judgment of noninfringement.

First, this case is factually similar to the situation presented in <u>Global Patent Holdings</u>.  Just like the accused method in <u>Global Patent Holdings</u>, the parties in this case agree that the "initiating a communication" step of claim 1 is performed by a patient or other user, not by a healthcare provider. (DSMF ¶ 548; Pl.'s Resp. to DSMF ¶ 548.)  In addition, like <u>Global Patent Holdings</u>, the method in MyChart does not begin until a computer user visits Defendant's website.  Moreover, the parties do not dispute that MyChart users choose whether or not to initiate a communication with the provider and the user is not under any obligation to initiate a communication.  (DSMF ¶¶ 551-554; Pl.'s Resp. to DSMF ¶¶ 551-554; Bysinger Dep. 405:17-406:5.)  As in <u>Global Patent Holdings</u>, "[i]f no person ever visited Defendant's website, then Plaintiff's patent would never be infringed."  Thus, the fact that MyChart users must initiate the communication in order to begin the patented method is, under <u>Global Patent Holdings</u>, sufficient to defeat a claim

of direct infringement absent evidence that MyChart providers direct and control the user to initiate the communication.

Second, McKesson cannot show that genuine issues of fact remain concerning whether MyChart providers direct and control MyChart users to initiate the communication.  McKesson relies on the testimony of two experts to show direction and control by MyChart providers: Dr. Charles Isbell and Dr. Wallace Bysinger.  As discussed below, McKesson no longer relies on the testimony of Dr. Isbell on the issue of direction and control.  Dr. Bysinger testified as to the following evidence of direction and control by providers:

- providers use login information to restrict patients' access;

- providers require that patients agree to certain terms and conditions in order to use the system;

- providers determine the user's level of access;

- providers require that the patient accept "cookies" in order to use MyChart; and

- patients can only access information provided by the provider or that the provider wants them to see.

(Pl.'s Resp. to DSMF ¶ 555.  See also Bysinger Dep. 408:19-412:16.)  Dr. Bysinger's testimony shows only that MyChart providers control the users' *access* to MyChart.  Dr. Bysinger himself admitted that each of the above facts is evidence of how providers control users' *access* to MyChart.  (Bysinger Dep. 408:19-412:16.)  In Muniauction, the Federal Circuit found that

controlling access to an online method and instructing users on how to use the method is insufficient evidence of direction and control.  Thus, under <u>Muniauction</u>, the evidence offered by McKesson is insufficient to demonstrate the direction and control necessary to establish joint infringement.

       <u>C.</u>     <u>Conclusion as to Infringement</u>

      In summary, Epic's MyChart product requires that a user initiate a communication with a provider before the method begins.  McKesson failed to demonstrate that genuine issues of fact remain concerning whether MyChart providers direct and control MyChart users to initiate the communication. Thus, under <u>BMC Res.</u> and its progeny, McKesson cannot demonstrate that any single party *directly* infringes the '898 patent.  Moreover, because a party must first show direct infringement in order to succeed on a claim of indirect infringement, McKesson's claims of indirect infringement fail.  <u>See</u> <u>Dynacore Holdings Corp. v. U.S. Phillips Corp.</u>, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement . . . can only arise in the presence of direct infringement[.]").

      Although the current state of the law requires that the Court grant Epic's motion for summary judgment, the Court notes that the single entity rule and <u>BMC</u>'s interpretation thereof severely limits the protection provided for patents which would otherwise be valid and enforceable.  A potential

infringer seeking to take advantage of a patented process could likely avoid infringement simply by designing its otherwise infringing product in a way that allows customers to decide initially whether to access it.  See generally Joshua P. Larsen, Liability for Divided Performance of Process Claims After BMC Resources, Inc. v. Paymentech, L.P., 19 DePaul J. Art, Tech. & Intell. Prop. L 41 (2008).  As long as the sale of a product constitutes an arms length transaction between the customer and the infringing company, which is insufficient to create vicarious liability, the patent holder would likely have no redress against the infringer.  Id.  This result weakens the policy of providing protection to those who devote the time and resources to develop otherwise novel and patentable methods.

## IV.   Plaintiff's Motion to Strike [#313]

Epic also moved to strike the declaration of Dr. Charles Isbell, which McKesson relies on to argue that MyChart providers exercise direction and control over MyChart users.  McKesson first filed Dr. Isbell's declaration in response to Epic's original motion for summary judgment of non-infringement.  The Court relied in part on Dr. Isbell's declaration in denying Epic's initial motion for summary judgment.  (See Order, May 16, 2008 at 7-9.)  McKesson concedes that the declaration it now relies on in opposition to Epic's current motion for summary judgment is the same declaration it relied

on in response to Epic's first motion for summary judgment.  (See Pl.'s Resp.
to Def.'s Mot. to Strike [#385] at 5.)  For the following reasons, the Court
grants Epic's motion and strikes Dr. Isbell's declaration.

First, at Dr. Isbell's deposition, McKesson stated that it would no longer
rely on Dr. Isbell's testimony or declaration on the issue of direction or
control.  The following exchange took place at Dr. Isbell's deposition between
counsel for Epic and counsel for McKesson:

| | |
|---|---|
| Epic's Counsel: | [I]s Dr. Isbell going to give any further opinions on the direction and control issue, or do you intend to use his declaration that you filed on summary judgment any further in this case? Because I've got questions on that – |
| McKesson's Counsel: | We are not – if it's not in his report, he's not going to be talking about it. |
| Epic's Counsel: | Okay. |
| McKesson's Counsel: | And specifically, if you're going to the direction or control issue of his declaration, the answer is no. |
| Epic's Counsel: | So you won't – let me just be clear.  You're not going to have him offer an opinion on the initiating communication, direction and control thing? |
| McKesson's Counsel: | No. |
| Epic's Counsel: | Nor are you going to ever use again in this case the declaration you submitted in opposition of the summary judgment motion? |

16

McKesson's Counsel:    That's correct.

Epic's Counsel:    I can skip some questions if that's the case, and I appreciate that.  All right.

(Isbell Dep. 179:11-180:11.)  Relying on McKesson's representation that they would no longer use Dr. Isbell's declaration on the direction or control issue, Epic did not question Dr. Isbell on that issue.

In addition, Dr. Isbell did not address the direction or control issue in the expert reports he submitted in this case.  Thus, Dr. Isbell will not be permitted to testify at trial concerning the direction or control issue.  See Fed. R. Civ. P. 26(a)(2), 37(c)(1).  In fact, McKesson admitted that it "did not and does not intend to request that Dr. Isbell provide any testimony at trial on the 'direction or control' issue . . . ."  (See Pl.'s Resp. to Def.'s Mot. to Strike [#385] at 7.)  Because Dr. Isbell cannot testify at trial on the issue of direction or control, McKesson cannot rely on Dr. Isbell's declaration to defeat summary judgment.  Therefore, the Court **GRANTS** Epic's motion to strike the portions of Dr. Isbell's declaration directed to the direction or control issue.

## V.  Conclusion

For the foregoing reasons, the Court **GRANTS in part** Defendant's motion for summary judgment [#314] with respect to Plaintiff's claims of infringement.  The Court also **GRANTS** Defendant's motion to strike Dr. Isbell's declaration [#378] and **DENIES** Defendant's motion for a status

conference regarding potential trial dates [#346].  The Court **DIRECTS** the parties to address within five (5) days of the entry of this Order, in writing and not to exceed ten (10) pages, whether it is necessary for the Court to address the remaining portions of the parties' respective motions for summary judgment.

     **SO ORDERED**, this   __6th__   day of September, 2009.

_____
JACK T. CAMP
UNITED STATES DISTRICT JUDGE